IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
SOUTHERN DIVISION

| | | |
|---|---|---|
| SUSAN J. SMITH, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | Case No. 13-3207-CV-S-ODS |
| | ) | |
| CAROLYN W. COLVIN, | ) | |
| Acting Commissioner of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |

## ORDER AND OPINION AFFIRMING
## COMMISSIONER'S FINAL DECISION DENYING BENEFITS

Pending is Plaintiff's appeal of the Commissioner of Social Security's final
decision denying his application for disability benefits. The Commissioner's decision is
affirmed.


## I.  BACKGROUND


Plaintiff was born in August 1958, completed high school and some college, and
has prior work history as an office manager. She alleges she became disabled on
November 14, 2008, due to a combination of the effects of congestive heart failure,
vascular disease, psoriasis, obesity, depression, and insomnia. She served as a
Mansfield, Missouri, City Alderman from April 2009 to April 2011, but this did not qualify
as substantial gainful activity under the Social Security Regulations.

The focus of this appeal involves the ALJ's findings regarding psoriasis,
depression and insomnia, so this Order will focus on those issues as well. The ALJ
found, based on Plaintiff's history of heart failure, vascular disease, psoriasis and
obesity, that Plaintiff could perform light work but was limited to two hours of standing or
walking and six hours of sitting. In addition, she could only occasionally engage in
"postural activities" and could not climb ropes or ladders. R. at 17. At step two of the
five-step sequential process, the ALJ found Plaintiff's depression, hypertension and

hypothyroidism were not severe impairments. Based on the testimony elicited from a vocational expert, the ALJ found Plaintiff could return to her past work as an office manager.

Plaintiff testified she had psoriasis since she was thirteen years old and that the condition had "gotten worse" as she got older, R. at 40, but there are scant medical records regarding the ailment. The medical records confirm she has the condition, but none suggest any limitations imposed by that condition (and none really suggest any change in her condition over time). In October 2010 she went to Family Health Center to establish care and obtain treatment for an ear infection; she saw a Nurse Practitioner (Beth Brandon), who noted Plaintiff had psoriasis "widespread over her body" but nothing in that note indicated it was worse or different than it had been in the past. R. at 403. A note from a subsequent visit in November 2011 indicates Plaintiff planned to see a dermatologist. R. at 445. Plaintiff testified she treats the condition by applying creams in the morning and at lunch, and in the evening applies baby oil and wraps it. She also utilizes salt baths. R. at 39. Her testimony also intimates a desire to not be near customers, R. at 41, but there is nothing more.

Plaintiff's initial visit to Family Health Center also represents Plaintiff's first statements regarding depression. However, little is said or diagnosed: Plaintiff "describe[d] herself as depressed. . . . She feels that this depression has been a problem since 2007 when she had a very bad year." Nurse Brandon started Plaintiff on Celexa. R. at 404. Plaintiff returned to Family Health Center in November and Nurse Brandon continued the prescription for Celexa, noting Plaintiff was "starting to sleep a little better." R. at 401. In May 2011, Nurse Brandon wrote that Plaintiff reported difficulty meeting home, work and social obligations, that her condition was worsening, and that Celexa worked well at first but lately Plaintiff "seems to be more depressed." Nurse Brandon increased Plaintiff's dosage of Celexa. R. at 458, 463. In November 2011, Plaintiff began seeing a different nurse practitioner, Nurse Diane Spaulding. At this initial encounter with Plaintiff, Nurse Spaulding indicated Plaintiff's depression was "under good control," and she was "negative for depressed mood, depression and marked diminished interest or pleasure." R. at 443; see also R. at 440. The following month, Nurse Spaulding changed Plaintiff's prescription to Zoloft. R. at 471. Plaintiff

concedes this change was made "because of her history of a heart condition" and not because of any perceived problem with her treatment for depression. Plaintiff's Brief at 10. On that same day -- and in stark contrast to what she wrote one month prior -- Nurse Spaulding completed a Medical Source Statement ("MSS") indicating Plaintiff was extremely limited in her ability to carry out detailed instructions, maintain attention and concentration for extended periods, sustain an ordinary routine, work in coordination or proximity with others, respond appropriately to changes in the work setting, or travel in unfamiliar places or use public transportation. The MSS also indicates Plaintiff is markedly limited in her ability to understand and remember detailed instructions, or complete a normal workday or workweek without interruption from psychologically based symptoms. Finally, Nurse Spaulding indicates Plaintiff is mildly limited in her ability to remember locations and work-like procedures, understand, remember and carry out short and simple instructions, maintain regular attendance or adhere to a schedule, make simple work-related decisions, interact with the public, accept instructions, respond to criticism, get along with others, take precautions against normal hazards, or set goals or make plans independently of others. R. at 468. However, at her initial encounter with Plaintiff just one month before, Nurse Spaulding indicated Plaintiff's depression was "under good control," and she was "negative for depressed mood, depression and marked diminished interest or pleasure." R. at 443.

Finally, with respect to insomnia, the Record reflects that when Plaintiff complained of difficulty staying asleep (which was not a complaint she registered consistently), it was usually part and parcel of her depression. E.g., R. at 401, 440. In May 2011, Nurse Brandon documented Plaintiff's report that insomnia was worsening – but this is when Nurse Brandon increased Plaintiff's Celexa dosage. Insomnia was not mentioned during Plaintiff's next visit in June 2011. R. at 451-57. In fact, it was not mentioned again until November 2011, at which time Nurse Spaulding simply noted Plaintiff "still has insomnia." R. at 440. Plaintiff testified she lost her last job because she had "trouble working completely through a day." When asked for more details, she explained that her problems included "sitting and doing the filing and lifting, and I was just having trouble with – working with the computer. I don't get a lot of sleep. I was having problems with sleep; I still am." R. at 32. Plaintiff elaborated on her difficulties,

explaining that her legs go numb and wake her up and she has difficulty getting to sleep; consequently, she was "only getting . . . three or four hours good sleep a night." R. at 33.

The ALJ found Plaintiff's depression was not severe because it did not cause more than a minimal limitation on Plaintiff's ability to work.  In reaching this conclusion, the ALJ noted Nurse Spaulding's November 2011 notation that Plaintiff's depression was well-controlled on Celexa and Plaintiff's failure to obtain treatment from a psychiatrist or psychologist.  The ALJ also considered Plaintiff's abilities under the four broad functional areas set forth in the Regulations and found Plaintiff was not limited in the areas of daily living, social functioning, or concentration/persistence/pace and that she had not suffered any episodes of decompensation.  R. at 15-16.  The ALJ also assigned little weight to Nurse Spaulding's MSS because she was not an acceptable medical source and her opinion was rendered "only after an initial visit, at which Ms. Spaulding noted the claimant's symptoms were well controlled with Celexa."  R. at 19.

The ALJ also found Plaintiff's daily activities and other aspects of Plaintiff's history that demonstrated her psoriasis and insomnia did not produce symptoms as severe as those she described.  These included: activities required concentration for extended periods of time, the fact that she worked for a significant period of time with these conditions, and the fact that she was able to perform the duties of a City Alderman.  R. at 18.

## II.  DISCUSSION

"[R]eview of the Secretary's decision [is limited] to a determination whether the decision is supported by substantial evidence on the record as a whole.  Substantial evidence is evidence which reasonable minds would accept as adequate to support the Secretary's conclusion.  [The Court] will not reverse a decision simply because some evidence may support the opposite conclusion." Mitchell v. Shalala, 25 F.3d 712, 714 (8th Cir. 1994) (citations omitted).  Though advantageous to the Commissioner, this standard also requires that the Court consider evidence that fairly detracts from the final decision.  Forsythe v. Sullivan, 926 F.2d 774, 775 (8th Cir. 1991) (citing Hutsell v.

Sullivan, 892 F.2d 747, 749 (8th Cir. 1989)).  Substantial evidence means "more than a mere scintilla" of evidence; rather, it is relevant evidence that a reasonable mind might accept as adequate to support a conclusion.  Gragg v. Astrue, 615 F.3d 932, 938 (8th Cir. 2010).

A.

Plaintiff contends the ALJ's decision regarding her depression is not supported by substantial evidence.  For purposes of step two of the five-step sequential process for analyzing disability claims, a medical ailment or condition is not severe if it imposes no more than a minimal impact on the claimant's ability to work.  E.g., Kirby v. Astrue, 500 F.3d 705, 708 (8th Cir. 2007); Page v. Astrue, 484 F.3d 1040, 1043-44 (8th Cir. 2007).  The ALJ found Plaintiff had no limitations in the first three functional areas and no episodes of decompensation. Plaintiff does not really challenge these findings; she argues the ALJ "fail[ed] to consider the limitation [Plaintiff] has in performing these activities," Plaintiff's Brief at 7, but this is a circular argument as the ALJ found there were no such limitations.  The ALJ properly noted the nature of Plaintiff's treatment and the reports of its efficacy.  Plaintiff emphasizes the fact that the Celexa prescription was replaced by one for Zoloft, but by her own admission this change was not made because Celexa was ineffective – and there is no evidence that Zoloft was less effective than Celexa.  Plaintiff also argues the ALJ erred in failing to give appropriate reasons for discrediting Nurse Spaulding's MSS.  To the contrary, the ALJ provided abundant reasons: Nurse Spaulding is not an acceptable medical source under the Social Security Regulations.  She had seen Plaintiff on at most two occasions before issuing her MSS, and on the first occasion she indicated Plaintiff's depression was well-controlled.  Nurse Brandon's notes indicated Plaintiff's depression was controlled.  Nowhere in the Record does Plaintiff report limitations as severe as those described in the MSS.  The MSS is inconsistent with Plaintiff's activities.  For all of these reasons, the ALJ was entitled to give little weight to the MSS, and was further entitled to find Plaintiff's depression was not severe.

<u>B.</u>

Plaintiff suffers from psoriasis.  This fact, alone, does not entitle her to benefits.  The question to be addressed is: how does psoriasis affect Plaintiff's ability to work?  <u>Cf</u>. <u>Forte v. Barnhart</u>, 377 F.3d 892, 896 (8th Cir. 2004); <u>Stormo v. Barnhart</u>, 377 F.3d 801, 807 (8th Cir. 2004).  Plaintiff offers little in answer to this question.  At most she professes a desire to avoid interaction with other people, but this mere personal desire is not a factor in the calculus.  The situation might be different if Plaintiff developed a medical condition (such as agoraphobia) as a result of the psoriasis – but in that case, the limitation would be caused by agoraphobia and not the psoriasis.  Plaintiff has not identified any work-related limitation resulting from psoriasis.  To the contrary, the ALJ noted Plaintiff was able to work with this condition for many years and was able to effectively treat the condition.  Plaintiff's generalized (and undocumented) claim that the condition has worsened does not deprive the ALJ's decision of substantial support from the Record.

<u>C.</u>

Finally, Plaintiff contends the ALJ failed to properly consider her insomnia.  As with her psoriasis, Plaintiff does not identify any work-related restrictions attributable to insomnia.  The ALJ effectively considered this issue when discussing Plaintiff's activities.  She noted Plaintiff's ability to go to the library to work on a computer or do puzzles and attend "monthly two-hour city council meetings" undercut the assertion that Plaintiff was too tired to work.  Further supporting the ALJ's decision are the aforementioned notes from Nurse Brandon indicating Plaintiff's insomnia improved with proper dosages of medication.  Plaintiff simply has not identified anything in the Record that deprives the ALJ's findings – and, ultimately, the RFC – from having the requisite substantial support.

### III.  CONCLUSION

The Commissioner's final decision is affirmed.

IT IS SO ORDERED.

/s/ Ortrie D. Smith
ORTRIE D. SMITH, SENIOR JUDGE
DATE: March 14, 2014                    UNITED STATES DISTRICT COURT